UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEFFREY T. WALSH, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-11-2603 |
| § | |
| STRATOS OFFSHORE SERVICES COMPANY, § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant Stratos Offshore Services Company's ("Stratos") motion for summary judgment. Dkt. 20. Stratos moves for summary judgment on Walsh's claims of unlawful termination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"). *Id.* Upon consideration of the motion, response, reply, and applicable law, Stratos's motion is DENIED.

**I. FACTUAL BACKGROUND**[1]

Stratos is a satellite telecommunications provider with operations in Texas and Louisiana. Dkt. 1 at 1 ¶ 2; Dkt. 20 at 1. On or about December 11, 2006, Stratos hired plaintiff Jeffrey T. Walsh ("Walsh" or "plaintiff"), a Caucasian male, as a Systems Engineer in its Houston-based Engineering & Integration Services ("EIS") department. Dkt. 20 at 1. In March 2007, Stratos hired Freddie Scott ("Scott"), an African-American male, also in the Houston EIS department. *Id.* at 2.

Beginning in late 2007 or early 2008, Walsh and Scott engaged in occasional "teasing" about their respective races via email and in person. *Id.* However, on November 20, 2009, Scott contacted

---

[1] The court views the evidence and draws inferences in the light most favorable to the nonmoving party, as it must on a motion for summary judgment. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Stratos's Director of Human Resources, Kevin Coombs ("Coombs"), and complained about Walsh's race-based teasing. *Id.* Scott apparently told Coombs that while he had tried to deal with Walsh's race-based conduct for some time, he had a reached a point at which he could no longer tolerate Walsh's teasing and asked that it be stopped. *Id.* Coombs processed Scott's complaint and suggested that Scott speak with Ric Dale ("Dale"), the Director of EIS. *Id.* Scott met with Dale later that day and requested Dale's assistance in stopping the alleged harassment. *Id.*

But rather than having Dale confront Walsh regarding the racial teasing, Scott requested a solution in which Dale would neither single-out Walsh nor identify Scott as the complainant. *Id.* at 3. Dale proposed to tell the EIS group members in a meeting that Human Resources had received a recent complaint (in place of Scott's actual complaint) from an unidentified person who overheard EIS employees engaged in race-based joking. *Id.* Stratos claims that the fictional complaint would be used as a basis for securing individual commitments not to engage in race-based joking or other harassment in the workplace. *Id.* At the meeting that afternoon, Dale testified that he presented the fictional complaint, reiterated Stratos's anti-harassment policy, and secured commitments from each employee, including Walsh and Scott, not to engage in race-based joking or other prohibited racial conduct. *Id.* at 3–4. Walsh testified, however, that he understood Dale's request to be narrowly addressed towards keeping the race-based joking between themselves, not necessarily to cease the racial jokes entirely. Dkt. 21, Ex. 1 at 31–32.

Two weeks later, on December 4, 2009, Walsh and Dale left Houston for business in Australia. Dkt. 20 at 4. During a layover in Auckland, New Zealand, Walsh took a photograph of

store signage at the "All Blacks" sports shop at the Auckland airport and emailed it to Scott.[2]  *Id.*  Scott forwarded the email to Coombs and asked that the email be added to his complaint.  Dkt. 20, Ex. F at 1.  Coombs responded that because he was going to be out of the office the following week, he would ask Peter Head ("Head"), an HR manager, to follow up with Scott.  *Id.*

Peter Head then contacted Dale in Australia and told him that Walsh had directed additional race-based conduct towards Scott, and Head asked Dale to speak directly with Walsh regarding Scott's complaint.  Dkt. 20, Ex. D at ¶ 13 (affidavit of Peter Head).  Dale met with Walsh soon thereafter and told him about Scott's complaint.  Dkt. 20, Ex. B at 100–01 (Head's deposition testimony).  Walsh responded that he was unaware that Scott was offended and would cease the teasing, and he asked that Scott do the same.  Dkt. 21, Ex. 1 at 35:4–6.  According to Walsh, Dale replied that he could not tell Scott to stop because "[h]e's a protected class."  *Id.* at 35:8.  Walsh then complained about this perceived discrimination and said that he would file a complaint with Head upon their return to Houston.  *Id.* at 35:10–15.  Dale responded negatively to this statement and told Walsh that he should not and could not complain because "[y]ou're not a protected class.  Freddie [Scott] is.  You can't — we can't make him stop."  *Id.* at 35:25–36:2.  Walsh testified that the entire conversation lasted between 10 and 30 minutes.  *Id.* at 37:1–2.  Then, a few weeks later, on the morning of December 21, 2009, Dale and another EIS manager, John Bertrand, met with Walsh in Houston and terminated his employment for the stated reason that, after further investigation, management lacked confidence that Walsh would cease the harassment against Scott.  *Id.* at 52–53; Dkt. 20, Ex. L at 1 (Walsh's written termination notice).

---

[2] "All Blacks" is New Zealand's national rugby team.  Dkt. 21, Ex. 1 at 93:18–19.  Scott testified at his deposition that Walsh had previously given him an All Blacks sports bottle that he purchased during an earlier overseas trip.  Dkt. 20, Ex. G at 44.  Scott claimed he was embarrassed and told Walsh that he was offended.  *Id.*  Walsh testified, by contrast, that Scott liked the gift of the All Blacks sports bottle.  Dkt. 21, Ex. 1 at 93:23–25.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The moving party bears the initial burden of informing the court of all evidence, if any, demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

### A. Background Civil Rights Law

Walsh alleges that Stratos unlawfully retaliated against him and terminated his employment on the basis of race, in violation of the TCHRA. *See* Dkt. 1, Ex. 2 at 11; TEX. LABOR CODE §§ 21.051(1), 21.055. The TCHRA prohibits an employer from discriminating against its employees on the basis of "race, color, disability, religion, sex, national origin, or age," or retaliating against an employee for filing a complaint or opposing a discriminatory practice. *Id.* §§ 21.051, 21.055. One of the purposes of the TCHRA, according to the Texas legislature, is to provide for "the execution of the policies of Title VII of the [federal] Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

As a result, Texas courts use analogous federal statutes and applicable case law to guide their reading of the TCHRA. *Quantum*, 47 S.W.3d at 476.

    **B.**    **The Unlawful Termination Claim**

In order to establish a prima facie case of discrimination through circumstantial evidence, the court engages in the familiar *McDonnell Douglas* three-step analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973); *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). First, to avoid summary judgment, a plaintiff must show a genuine dispute of material fact as to the four elements of a prima facie case of discrimination. *Willis v. Coca-Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006); *Hines*, 252 S.W.3d at 508. To establish a prima facie case, the plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the plaintiff was replaced by someone outside of his protected class or others similarly situated were treated more favorably. *Willis*, 445 F.3d at 420; *Rutherford v. Harris Cnty.*, 197 F.3d 173, 184 (5th Cir. 1999). Once the plaintiff makes this showing, the burden of production shifts to the defendant employer to identify a legitimate, non-discriminatory reason for the adverse employment action. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003); *Hines*, 252 S.W.3d at 508. Finally, the plaintiff, who bears the ultimate burden of persuasion at all times to prove discrimination, must raise a genuine dispute of material fact that the non-discriminatory reason is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097 (2000); *Willis*, 445 F.3d at 420; *Hines*, 252 S.W.3d at 508. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional

5

discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998) (internal quotation marks omitted).

The parties' dispute in this case centers around the fourth requirement of plaintiff's prima facie case, i.e., whether Walsh was treated less favorably than similarly situated coworkers, and the issue of pretext.[3] Walsh appears to identify only one comparator, Freddie Scott, for this analysis. Dkt. 21 at 17. Walsh claims that Scott was treated more favorable than plaintiff because Stratos did not terminate Scott's employment for engaging in the same behavior that led to Walsh's dismissal. *Id.* at 17–18. Stratos contends that Scott is not a proper comparator because he and Walsh had different supervisors, different responsibilities, and engaged in different conduct, each of which accounts for the disparities in treatment. Dkt. 20 at 14. Further, Stratos argues that even if Walsh meets his prima facie burden, he cannot raise a genuine dispute of fact on the issue of pretext because has no evidence tending to prove that the reason for his termination was false. *Id.* at 19–21. After considering the record and the applicable law, the court holds that the plaintiff's proffered evidence establishes a genuine dispute of material fact as to whether he and Scott are similarly situated and whether Stratos's explanation for his termination is false.[4] Stratos's motion for summary judgment on the unlawful termination claim is DENIED.

---

[3] Stratos concedes that Walsh has demonstrated the first three elements of his prima facie case.

[4] In Stratos's reply, Stratos informs the court that it contemplated filing a motion to strike certain exhibits in Walsh's response, but Stratos does not present the grounds for its objections to Walsh's evidence. Dkt. 26 at 1 n.2. Stratos nevertheless asks the court to consider the objections "to the extent [it] is willing and procedurally able" to do so. *Id.* Regardless of the procedural posture of Stratos's objections, the court has not relied upon this evidence in making its determination on summary judgment and does not express any opinion on the challenged evidence at this time.

**C.      The Retaliation Claim**

Stratos also moves for summary judgment on Walsh's prima facie claim of retaliation, contending that Walsh cannot establish a prima facie case of retaliation under the TCHRA. For Walsh to establish a prima facie case, he must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.–Houston [14th Dist.] 2007, pet. denied). Protected activities include: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; and (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *Id.* (citing TEX. LABOR CODE § 21.055).

Stratos argues that Walsh cannot demonstrate a genuine dispute of material fact on the first and third elements of his prima facie case. The court considers these elements in turn.

*1. Protected Activity*

As stated above, the TCHRA protects an employee from retaliation or discrimination by an employer because the employee "opposed a discriminatory practice." TEX. LABOR CODE § 21.055(1); *Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 223–24 (Tex. App.—San Antonio 1998, pet. denied). To establish this element, the employee must at least demonstrate a good-faith, reasonable belief that the underlying discriminatory practice of the employer violated the law. *See Cook*, 974 S.W.2d at 224. In other words, the employee is not required to show that he opposed an actual unlawfully discriminatory practice, only that he held a good-faith, reasonable belief that the employer engaged in activity made unlawful by the TCHRA or Title VII. *Cook*, 974 S.W.2d at 224.

Stratos contends that Walsh did not engage in a protected activity when he complained about Scott's race-based harassment. Dkt. 20 at 22. Stratos argues that Walsh viewed such conduct as joking and not subjectively unwelcome; Walsh therefore could not reasonably believe that Scott's conduct violated the TCHRA. *Id.* at 22–23. Walsh responds that he not only opposed Scott's race-based harassment, but that he also opposed the warning and discipline he received when Scott did not receive similar treatment. Dkt. 21 at 22–23. The court agrees with the plaintiff.

Walsh testified that Ric Dale told him that he could not complain about Scott's alleged harassment because Walsh was "not a protected class." *Id.*, Ex. 1 at 35:20–36:2. According to Walsh, Dale added that "Freddie is [a protected class]. You can't — we can't make him stop." *Id.* at 36:1–2. Although Walsh's deposition testimony is self-serving, his testimony is made on personal knowledge and sets forth facts that would be admissible in evidence, and it is competent summary judgment evidence that can create a triable issue of fact. *See C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) ("An affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving"); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment — including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial — a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.").[5]

---

[5] Stratos cites cases in its reply that reject self-serving deposition testimony as incompetent summary-judgment evidence. Dkt. 26 at 9; *see, e.g.*, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994); *Ramirez v. El Paso Psych. Ctr.*, 2012 WL 162404, at *7 (W.D. Tex. Jan. 19, 2012). However, *Grizzle* and *Ramirez* addressed the insufficiency of self-serving testimony that was speculative or conclusory. *See Grizzle*, 14 F.3d at 268 (holding that the plaintiff's subjective, generalized testimony was insufficient to raise a fact issue); *Ramirez*, 2012 WL 162404, at *7 n.16 (holding that when an employee is discharged for alleged sexual harassment, the employee's bare statement that he did not commit sexual harassment was insufficient to create a triable issue of fact). By contrast, Walsh testified about

Regardless of whether Scott's alleged race-based harassment rises to the level of a plausible TCHRA violation, Walsh presented sufficient evidence that Stratos's alleged refusal to discuss the conduct and/or discipline Scott because he is "in a protected class" creates a genuine dispute of material fact as to whether this refusal could reasonably be viewed as disparate treatment. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S. Ct. 1508 (2001). Accordingly, a genuine dispute of material fact exists as to the "protected activity" element of a Walsh's retaliation claim.

### 2. *Causation*

Stratos also argues that even if the court finds a genuine dispute of fact on the first prong of the retaliation test, Walsh cannot raise a fact issue as to whether there is a "causal link" between the protected activity and his termination. *See* Dkt. 20 at 25; *Gee*, 289 F.3d at 345.[6] Walsh contends that a causal link can be inferred based on the fact that his complaint to Ric Dale preceded his termination by at most a few weeks. Dkt. 21 at 25.

The prima facie standard is much less stringent than the but-for standard to show pretext and may be satisfied, in certain cases, based on temporal proximity between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). In

---

specific comments from Ric Dale that could lead a factfinder to conclude that Walsh reasonably believed that Stratos unlawfully discriminated against him on the basis of race. Walsh's testimony was not vague or speculative and should not be excluded merely because it is self-serving. As the Fifth Circuit cogently stated: "If all 'self-serving' testimony were excluded from trials, they would be short indeed." *Pittman*, 453 F. App'x at 443.

[6] Stratos argues in its reply brief that Walsh cannot demonstrate but-for causation based solely on the temporal proximity of the protected activity to his discharge, and therefore summary judgment on the retaliation claim is warranted. Dkt. 26 at 11; *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation."). However, Stratos moved for summary judgment on grounds that Walsh could not create a genuine dispute of material fact on the issue of prima facie, not but-for, causation. Dkt. 26 at 11 (arguing that Walsh could not move forward on his retaliation claim because "the third and final element of a *prima facie* case for retaliation requires proof of a "causal link" between the protected activity and the adverse employment action"). Although Stratos argues in its reply for summary judgment based on Walsh's purported failure to raise a fact issue on but-for causation, it is this court's general practice not to consider arguments raised for the first time in reply briefs. *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008).

9

*Breeden*, for example, the Supreme Court noted that "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Breeden*, 532 U.S. at 273 (internal quotation marks omitted). And although the Supreme Court did not define "very close" in *Breeden*, the Fifth Circuit has held that a period of up to four months may be sufficient to show a causal link. *See Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (finding that a period of less than sixty days was sufficiently close to establish a causal link for a prima facie case of retaliation); *Stroud v. BMC Software, Inc.*, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) (three weeks); *Ware v. CLECO Power LLC*, 90 F. App'x 705, 708 (5th Cir. 2004) (fifteen days). *Cf. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding that a five-month lapse, by itself, does not support an inference of a causal link).

Based on these cases, the court has no difficulty in concluding that Walsh's evidence of temporal proximity, while thin, is sufficient to withstand summary judgment. Walsh has therefore demonstrated genuine disputes of material fact on the elements of his prima facie retaliation case, and Stratos's motion for summary judgment is DENIED.

## IV. CONCLUSION

After reviewing the arguments of the parties, the summary judgment record, and the applicable law, the court DENIES Stratos's motion for summary judgment.

Signed at Houston, Texas on September 7, 2012.

_____
Gray H. Miller
United States District Judge

10